## United Order of American Brick Layers and Stone Masons of Chicago v. Patrick J. Fitzgerald.

1. AGENTS—*Of Corporations—When Persons Must Deal with, at Their Peril.*—While there is no general rule that requires a person dealing with the agent of a corporation to take notice of what is contained in its by-laws, which are the source of the agent's authority, yet where the corporation exists only for a special purpose and the agent does not belong to a class usually understood to possess the authority to act in the particular regard that he claims to act in, and the corporation has not held him out as possessing such authority, a party dealing with him must, at his peril, ascertain what the power of the agent is.

2. SAME—*Their Source of Power.*—All authority emanates from the principal, and to bind him, the alleged authority of the agent must in some way be traced to him.

3. ESTOPPEL—*By Whom the Doctrine Can Not be Invoked.*—A party to a conspiracy to practice a fraud on another is not in a position to invoke the doctrine of estoppel against the person upon whom the fraud is practiced.

4. SAME—*Fraudulent Leases.*—A person is not to be estopped from setting up the invalidity of a lease fraudulently obtained, because he accepted rent under it, if he did so without knowledge of the fraud.

**Bill for an Injunction—Cross-Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the March term, 1895. Reversed and remanded with directions, etc. Opinion filed June 24, 1895.

U. O. of Am. Bricklayers, etc., v. Fitzgerald.

Wm. M. Johnson, attorney for appellant, contended that the finding of the master is conclusive on the facts.   Whitcomb v. Duell, 54 Ill. App. 650; Corporation Act—Corporations Not for Pecuniary Profit, Sec. 31.

So far as the authority of an agent of a corporation is defined by its charter or articles of association the scope of an agent's authority and powers must always be considered as disclosed.   Morawetz on Corporations, Sec. 591; Alexander v. Caldwell, 83 N. Y. 480; Davis v. Old Colony R. R. Co., 131 Mass. 260.

One dealing with the agent of a corporation must, at his peril, ascertain what powers have been actually delegated to him, and if these powers are conferred by a by-law it is clear that the terms of the by-law must be ascertained. Morawetz, Sec. 593, and cases there cited.

The property of a charitable corporation is held in trust for special uses prescribed by the charter.   No ratification or violation of trust subject to which property is held. Morawetz on Corporations, Sec. 631.

Trustees of a religious society must meet as a board so that they may hear each other's views, deliberate and decide. St. Patrick's Church v. Gavela, 82 Ill. 170.

Powers of trustees in respect to the property are subordinate to the customs and uses of the organization.   Trustees v. Stewart, 43 Ill. 81.

The foundation of the principle of estoppel is laid in the obligation which every man is under to speak and act according to the truth of the case.   Bigelow on Estoppel, Secs. 14, 456–694.

Good faith is always a controlling factor.   Mattoon v. Green, 31 Ill. App. 471; Ball v. Hooten, 85 Ill. 161.

M. R. Harris, attorney for appellee, contended that no authority cited for the appellant goes so far as that persons not members, dealing with such a corporation, must or can take notice of a verbal motion put and carried in a secret meeting, the only record of which is a reference thereto in the secretary's minutes.   The by-laws being silent as to the

manner of executing leases and by whom they shall be executed, the appellant, a corporation, having power to make such a lease as the one in question, and having received and appropriated to its own use the rents reserved in said lease from July 1, to November 1, 1893, and the lease having been executed by the customary officers of the corporation who have at all times performed similar acts, the appellant is estopped to deny liability under its contract on the ground that its officers were not technically authorized to make it. Beach on Private Corporations, Vol. 1, Sec. 187; Peterborough R. Co. v. Nashua & Lowell R. Co., 59 N. H. 385.

Acts performed by officers within their apparent power form an exception to the general rule. And this exception goes so far that even their fraudulent acts may operate to bind the company. Beach on Private Corporations, Vol. 1, Sec. 193; Morawetz on Corp. (2d Ed.), Sec. 585; Eaglesfield v. Marquis of Londonderry, 4 Ch. Div. 693.

The corporation, then, is estopped to deny its entire familiarity with every condition of the lease on and after its acceptance of three installments of the rent reserved in said lease. These acts on the part of the appellant are a full ratification of the lease as executed irrespective of the technical act of execution on the part of the president and trustees. Ratification may also be presumed by a failure to exercise promptly the right of disaffirmance. Beach on Private Corporations, Vol. 1, Sec. 195; Taylor v. Albemarle Steam Navigation Co. (N. C.), 10 S. E. Rep. 897.

Ratification of the unauthorized acts of officers of corporations may be presumed indirectly from acts of recognition and acquiescence beyond the time during which disaffirmance might have been made. Beach on Private Corporations, Vol. 1, Sec. 196; Scott v. Jackson M. E. Church, 50 Mich. 528.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellant is a corporation organized under the statutes of Illinois relating to corporations not for pecuniary

profit, and is the owner of a building in Chicago, known as Bricklayers' Hall, situated at the corner of Monroe and Peoria streets.

The ground or street floor of the building is divided into stores, and two hallways that lead, respectively, from Monroe and Peoria streets to stairways extending to offices and halls in the upper stories. The principal hallway is the one opening from Monroe street, and on one side of that hallway, and opening into it by a doorway, is a store numbered 241 Monroe street.

Another store, known as the corner store, was originally designed for and had always been leased and used for a drinking saloon, and the appellee, with a partner, had been its lessee and occupant for a period of about five years at a monthly rental of $140, and had the exclusive privilege of selling liquor within the building.

The lease of the corner store to the appellee and his partner expired by its terms October 31, 1893, and appellant had advertised for bids for a lease of the store for another term with like exclusive liquor-selling privileges.

The store, No. 241 Monroe street, had been vacant for some time prior to July 1, 1893, and about that date negotiations by one William J. Cochrane with Michael Mangan, one of appellant's trustees, for a lease of it were begun. Those negotiations resulted in a written lease, dated July 1, 1893, wherein it was recited that appellant, as party of the first part, demised to said Cochrane, as party of the second part, the said store for a term of five years at a monthly rental of $30.

Said lease was signed and sealed as follows:

> "Hugh J. Ward, Pres.,
> Mike Mangan, Trustee,        Corporate Seal
> L. P. Anderson,    "         of the Appellant
> Charles Eilert,    "         Corporation.
>
>                    W. J. Cochrane.    [Seal.]"

On the back of said lease was indorsed an assignment to the appellee, by said W. J. Cochrane, dated July 12, 1893.

On October 25, 1893, the appellee filed his bill for an injunction against the appellant and certain of its agents.

The bill alleged the execution by appellant of said lease to Cochrane, and its assignment by Cochrane to appellee, and that since the date of said assignment, he, the appellee, had been in possession and occupancy of the demised premises; that there are two entrance doors to said premises, one of which opens upon Monroe street and the other to a hallway that leads out to Monroe street and to the stairway that leads to the halls in the upper part of said building, both of which entrances, it is alleged, have been in use by the appellee and are necessary for the accommodation of his business; that the appellant threatens to permanently close up the entrance from the hallway and to forfeit said lease; and the prayer of the bill is, that from executing said threats, and from doing anything contrary to the terms of the lease, the appellant be perpetually enjoined.

The bill was answered by the appellant, who also filed its cross-bill.

The relief sought by the cross-bill was a cancellation of the said lease to Cochrane, and an injunction against the appellee from occupying said premises No. 241.

The cross-bill shows that the appellant is a corporation or association, organized under the statute governing voluntary associations not for pecuniary purposes, its officers consisting of a president-collector, vice-presidents of various nationalities, financial and recording secretaries, treasurer, and three trustees, whose duties are defined by by-laws; the powers and duties of those several officers are set forth in the by-laws; that neither by resolution, by-law or otherwise is power or authority given to any of its officers to rent the real estate of the union, but such power has been at all times expressly exercised by the union in meeting assembled, or by specially designated officers pursuant to a vote of the union; that the pretended lease in question never was acted upon or granted by the union or made or executed pursuant to any authorization by the union; that when the building of which these premises are a part, was erected, a store on the corner, and called the corner store, was set apart and fitted up for saloon purposes, and liquor was not permitted

to be sold in any other part of the building; that when the building was completed, this corner saloon was rented by said Fitzgerald and a partner for five years at $140 per month; this lease granted the exclusive sale of liquor in the entire building to them and continued in force until October 31, 1893, and he with his partner remained in business there until this bill was filed; that said lease to him and his partner of the corner store was voted upon and granted by the union in meeting assembled, signed by its president and trustees pursuant to a resolution of the union; that at all times when any of the stores were rented, it was first passed upon by the union, and when granted, signed pursuant to a like vote; that appellee, whose partnership at the corner store ended on October 31, 1893, well knowing that no other than the corner store could be rented for saloon purposes, entered into a conspiracy with Michael Mangan, who acted as chairman of the board of trustees, and Hugh Ward, the president-collector, two of the outgoing officers of the union, to procure a lease of this store, No. 241 West Monroe street, which was located next to the main entrance to the hall, above which is located the offices of the union, its own meeting hall and a number of halls rented out to various societies and organizations; that he accordingly procured a friend of his, the said Wm. J. Cochrane, to make application to Mangan, the trustee, for a lease of this store, ostensibly for a real estate office; that Mangan presented the lease in the usual form to his co-trustees without erasure, and at Mangan's request they signed it, he, Mangan, having signed it, and Ward, the president, also signed it; that after it was thus signed the clause prohibiting subletting was stricken out, and also the use for which it was to be rented; that Cochrane ostensibly opened up a real estate office, occupied the store, and himself paid the rent until this suit was commenced, when Fitzgerald commenced to fit it up as a saloon; that the rental value for saloon purposes is not less than $100 per month; that bids had been advertised for, for the corner saloon, and were to be received October 27, 1893, for renting for saloon purposes with the same exclusive privilege

contained in the former lease of Fitzgerald and his partner, which had been in force since the erection of the building, and for which purpose a larger rental could be obtained than for any other, but which is prevented by the occupancy of No. 241 by appellee as a saloon.

The cross-bill further shows that the side entrance to these premises opens into the hallway in which is the stairway leading to the halls and the main entrance to the building, and that to permit such an entrance to be used as the means of ingress and egress to a saloon would create a nuisance there, and immeasurably diminish the rental value of the halls and their use as a meeting place for societies.

Appellee answered the cross-bill insisting upon the validity of the lease, and alleging the payment of rent thereunder by him to appellant's financial secretary, whereby appellant is estopped from denying the validity of the lease, and that in reliance upon the validity of the lease, he has invested $2,000 in saloon fixtures, and denying all conspiracy with the officers of appellant.

The cause was referred to a master who found that the proved facts supported the allegations of the cross-bill, except as to the alleged erasures in the lease having been made after its execution, and recommended that the bill be dismissed and a decree entered as prayed by the cross-bill.

To the report of the master in favor of the cross-bill, exceptions were sustained by the court, and both bill and cross-bill were dismissed for want of equity.

This appeal is from that part of the decree dismissing the cross-bill.

We think the court erred in overruling the master's report and dismissing the cross-bill.

The objects of the appellant corporation, as disclosed by its constitution, are:

" To unite and associate together all practical brick layers and stone masons, for the purpose of securing concert of action in whatever may be regarded as conducive to their interests."

The statute provides that corporations of this character, not for pecuniary profit, may hold and dispose of real and

personal estate for the purposes of their organization; may make and enforce contracts in relation to their legitimate business; may make by-laws, not inconsistent with the constitution and laws of the State, which by-laws shall prescribe the duties of officers of the corporation.

The officers of appellant are, in substance, as set forth in the cross-bill.

Unless a provision in the by-laws of the appellant that the president-collector shall " sign all official documents that are authorized by this union," relates to the subject, we are unable to find in the printed constitution and by-laws that were introduced in evidence any provision, and counsel have pointed out no other, regulating the manner of making or evidencing leases of the real estate of the appellant.

It was proved that the custom of the appellant in the matter of making leases was to have such instruments executed by the president-collector and the trustees, upon being authorized so to do, by a vote of the union, in meeting assembled. No such authority or vote was given in this instance.

The appellant was not a business corporation for general business purposes of any kind, and there was no presumption in favor of authority on the part of its officers to execute the lease in question, as might exist in the case of a business corporation. The by-laws gave no authority to any officer or set of officers to make leases generally, or this lease in particular. It seems quite clear from the evidence that all power in such regard was intended to be reserved to the body of the corporation. This appears to be so, both from the absence of any by-law conferring such duty or power upon the officers, and from the custom of the corporation to exercise the power itself. It is clearly proved that no instructions were ever given by the appellant to its officers to execute the lease, or to do anything in ratification thereof, and it was proved by one of the trustees, who signed the lease at the request of another trustee, that it was represented to him by that trustee that the lease was to be submitted to the next meeting of the members, which, however, was not done.

While there is no general rule that requires a person dealing with the agent of a corporation to take notice of what is contained in or omitted from its by-laws, which are the source of the agent's authority, yet where the corporation exists only for a special purpose and not for general business of any kind, and the agent does not belong to a class usually understood to possess the authority to act in the particular regard that he claims to act in, and the corporation has not expressly or impliedly held him out as possessing, a party dealing with such agent must at his peril ascertain what the power of the agent is.    Morawetz on Corp., Sec. 593.

All authority emanates from the principal, and to bind him the alleged authority of the agent must in some way be traced home to him.    Mechem on Agency, Sec. 707.

From all that appears in the record we are of the opinion that no power existed in any of the officers of the appellant who signed the lease in question, in the absence of a vote of the members of the corporation, to bind the appellant by the lease, and that Cochrane did not acquire any interest in the premises by the mere execution and delivery of the lease to him.

But it is contended, as set up in the answer of appellee to the cross-bill, that the officers of the appellant having made the lease, and rent having been paid thereunder for the four months, July to October, 1893, and the appellee having expended money in fixtures, etc., in reliance upon the lease, the appellant is estopped from denying its validity.

The consideration of that question involves the circumstances attendant upon the procuring of the lease by Cochrane and the appellee's part therein, and in the subsequent payment of the rent.

From the evidence it is manifestly apparent that it was opposed to the pecuniary interests of the appellant to have the premises in question used for a drinking saloon. Its effect would be to materially lessen the rental value of the corner store for a saloon, for which purpose it was originally intended, and for which it had always been used; and an opening from a drinking saloon into the main entrance

or hallway leading to the upper halls and offices would almost certainly materially impair their rental value. That such would be the effect was clearly proved, and is readily understood.

The appellee's lease of the corner store which he had held for a saloon for nearly five years, at a rental nearly five times greater than the rent for the store in question, was to expire in a few months, and it is inferable from the evidence that he was not likely to obtain a renewal of the same.

Cochrane, who obtained the lease in question, had never before been engaged in business on his own account. He had been an acquaintance of appellee for twenty years or more, and had been a frequenter of appellee's place during the time the latter occupied the corner store.

The printed clause in the blank form of lease that was executed, relating to the occupancy to which the store should be put, was erased before its delivery to Cochrane, but it clearly appears from the evidence that Cochrane represented that he intended to use the premises for a real estate office. While Cochrane probably did go in and out of the office after the lease was executed and before it was assigned to appellee, it is certain that he never attempted to do any business there before he assigned the lease, and that it was not until after he assigned the lease that he moved a table and some chairs into the store and had his sign, indicative of a real estate business, painted upon the window, and that he never did, in fact, transact any business of that kind on the premises.

The master found, and we think justifiably so, that although the lease was dated July 1, 1893, it was not in fact executed earlier than July 10th, which was only two days before it was assigned to appellee. Indeed, there was some positive evidence that he did not get possession of the store until after he had assigned the lease.

While it seems that Cochrane paid the first month's rent out of his own money, he did so not more than two days before he was reimbursed by the appellee, and all subsequent rent that was paid for the three succeeding months

was furnished by appellee to Cochrane, who paid the same to the appellant's financial secretary in his own name, and without disclosing the fact that he had assigned the lease to appellee.

Cochrane continued, with the permission of appellee, to occupy the store in a desultory way during all the time that he paid the rent with appellee's money, down to about the time appellee filed the original bill—never, however, making known to appellant that he was occupying it in any way except as lessee—and again, as late as November 1st, offered to pay the rent for that month with money furnished by appellee, which was refused on the ground that he was offering it for appellee.

It was not until a very few days before the original bill was filed by appellee that appellant knew or had reason to know that appellee claimed the premises, and thereafter no rent was accepted. Appellee himself, in August, denied to appellant's financial secretary that he was paying the rent, and that denial was made in answer to a direct question put to him, accompanied by a statement by the secretary that he had heard rumors to that effect. It should be borne in mind that Cochrane, who had never been engaged in business of any kind for himself, entered into this lease obligating himself for a term of five years, when, as he testified, he entertained fears, that almost immediately after he secured the lease ripened into a conviction, upon which he acted, that the location was not a good one for the real estate business.

Men acting in good faith do not ordinarily assume such burdens for themselves, contrary to their own opinion, when first starting out in business. On the other hand if he were acting for appellee, whose business had been long established but a few feet away and in the same building, a long term lease would be precisely what would be most desired.

Another feature of significance is the fact that Mangan, one of the trustees, procured Eilert, another trustee, to accompany him from the job where the latter was working

in the center of the city to a neighboring saloon where they met the appellee, and that appellee there treated the two to drinks, and then procured the pen and ink with which they there signed the lease.

The appellee, though testifying in the case, did not deny that circumstance, and gave no reasonable explanation of his apparent interest in the matter, although it happened within a very few days before the lease was assigned to him.

The appellee knew from his former dealing with the appellant in the matter of the lease to himself and partner of the corner store, for the preceding five years, that liquor selling within the building was to be confined to that store, and that the exclusive privilege of selling liquor in the building attached to that particular store, and gave to it a much enhanced rental value, and it must be inferred that he knew he could not directly obtain a lease of the store in question for like purposes.

It would add no value to this opinion to refer to all the evidence, but, from a consideration of it all, we are satisfied Cochrane had no good faith intention to procure the lease for his own business, but that he and the appellee conspired together to procure the lease for the latter for a saloon, and that the trustee, Mangan, was a party to such conspiracy, and that in pursuance of the successful execution of that conspiracy the appellant was most manifestly and seriously injured, and should have had the relief prayed by its cross-bill.

The appellee, being a party to the conspiracy and fraud practiced upon the appellant, is not in a position to invoke the doctrine of estoppel, which has its basis in equity.

We can see but one conclusion that can be reached from a consideration of the entire record, and that is that the appellee was the real party in all the negotiations and actings of Cochrane, and he should not be permitted to reap any benefit from the fraud that was practiced by him upon appellant, through the agency of Cochrane, aided therein by the trustee, Mangan.

The appellant ought not to be estopped from setting up the invalidity of the lease because it accepted rent before it knew of the fraud.

The appellant did not accept any rent or do any other act of affirmance or ratification after it knew, or had reason to know of the fraudulent practices to which it had been subjected, and before or without knowledge, there could have been no ratification and consequently no estoppel.

The appellee entered upon the transaction with his eyes open to all the situation, and having himself appealed to equity, he can not complain that equitable relief should be allowed against him.

The decree of the Circuit Court will therefore be reversed, and the cause remanded, with directions to that court to enter a decree in favor of appellant upon its cross-bill in accordance with the report of the master.